IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ECLIPSE IP LLC,  <br>    Plaintiff,  <br>v.  <br>ALFA VITAMIN LABORATORIES, INC.,  <br>    Defendant, | Civil Action No. 2:15-CV-353  <br>CONSOLIDATED LEAD CASE |
| ECLIPSE IP LLC,  <br>    Plaintiff,  <br>v.  <br>MARTEN TRANSPORT, LTD.,  <br>    Defendant. | Civil Action No. 2:15-CV-527  <br>JURY DEMAND  <br>PATENT CASE |

**DEFENDANT MARTEN TRANSPORT, LTD.'S REPLY IN SUPPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST-AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## INTRODUCTION

**Now** is the time to consider and rule on Marten Transport, Ltd.'s ("Marten") Motion to Dismiss. Rule 1 of the Federal Rules of Civil Procedure dictates that courts should administer the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Marten's Motion is ripe for determination by the Court. Without considering the Motion now, both parties and the Court, as well as the other defendants in this consolidated case, will unnecessarily waste valuable time and resources on these indefensible patents. This Court should follow clear guidance from both the Supreme Court and Federal Circuit and hold that the '239 and '899 Patents are invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347 (2014) because they do not claim subject matter eligible for patent protection. Marten's Motion is unique from other *Alice* motions because the U.S. District Court for the Central District of California has already invalidated the parent patent

to the '239 and '899 Patents. Accordingly, this Court should now do the same with the '239 and '899 Patents.

In its Brief in Opposition to Marten's Motion to Dismiss, Eclipse fails to refute the central issue in this inquiry: that its '239 and '899 Patents are fatally flawed under both steps of the Supreme Court's *Alice* analysis. All claims of both patents (1) are nothing more than abstract ideas relating to basic human activities and (2) lack any inventive concepts that transform such abstract ideas into subject matter eligible for patent protection. At best, the claims of the '239 and '899 Patents fall far short of anything inventive under the Patent Act and amount to nothing more than the use of conventional features on a conventional computer in connection with basic, abstract ideas such as authenticated communication and item tracking. Thus, the Court should decide this Motion now and hold that both patents are invalid under 35 U.S.C. § 101 and *Alice*.

## ARGUMENT

**I.  THE CLAIMS OF BOTH ECLIPSE PATENTS LACK ANY INVENTIVE CONCEPT THAT TRANSFORMS THE CLAIMS INTO PATENT-ELIGIBLE SUBJECT MATTER.**

Neither the '239 Patent nor the '899 Patent contains an inventive concept that transforms the claims into patent-eligible subject matter under the second prong of *Alice*. Tellingly, Eclipse makes little effort, less than two full pages, attempting to overcome the critical conclusion that both patents' claims lack an inventive concept. *See* Eclipse IP LLC's Response to Defendant Marten Transport, Ltd.'s Motion to Dismiss, pp. 13-15 (hereinafter referred to as "Eclipse's Br. in Opp."). Even more telling, Eclipse makes absolutely no effort, and offers no evidence, to refute the conclusion that its patent claims lack an inventive concept because they recite nothing more than the use of a generic computer to perform an abstract idea. *Id.* Both the Supreme Court and Federal Circuit have unequivocally held that using a generic computer to carry out an abstract idea does not make an abstract idea patent-eligible. *Alice*, 134 S. Ct. at 2359-60;

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366-71 (Fed. Cir. 2015); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277-79 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).

Eclipse's own explanations of its '239 and '899 Patents only serve to further highlight how these claims amount to nothing more than the use of a conventional computer to carry out an abstract idea. In Eclipse's own words, the '239 and '899 Patents relate to "'methods for parties to discuss the status of a tracked item, including either authenticating the source of the communication ('239 Patent) or allowing a party to confer with another party regarding a tracked item ('899 Patent).'" Eclipse's Br. in Opp., p. 13. Nothing more than a conventional computer is used to carried out these steps, and Eclipse provides no evidence to the contrary. Dkt. 1-1, col. 94, ll. 3-18; Dkt. 1-1, col. 95, ll. 18-33; Dkt. 1-2, col. 92, ll. 1-13; Dkt. 1-2, col. 92, ll. 44-46.

Eclipse then misapplies and mischaracterizes the Federal Circuit's analysis in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), while it further demonstrates that its claims amount to nothing more than the use of the conventional computer to carry out an abstract idea. Eclipse's Br. in Opp., pp. 13-14. Eclipse first explains that "the '239 Patent claims specify how a party selects authentication data that is subsequently stored and then used to send authenticated notifications to a personal communications device associated with that party, which yields the desire result: authenticated notifications." *Id.* This amounts to nothing more than the use of a conventional computer to carry out an abstract idea, and Eclipse offers no explanation to the contrary. Eclipse then explains that "the '899 Patent claims specify how interactions between monitored travel data and communications between first and second parties via a personal communications device are manipulated to yield a desired result [sic] i.e. an

automated notification system." *Id*. at 14.  Again, this amounts to nothing more than the use of a conventional computer to carry out an abstract idea, and Eclipse provides no evidence to the contrary.

Eclipse concludes that "[t]hus, the '239 and '899 Patent claims recite solutions that are inventive concepts, and which resolve problems associated with non-authenticated and non-automated notification systems, respectively." *Id.*  This conclusion amplifies that if the Eclipse patent claims accomplish anything at all, it is merely the use of a conventional computer to transition from one conventional feature (i.e., non-authenticated or non-automated) to another conventional feature (i.e., authenticated or automated) while carrying out an abstract idea (i.e., tracking an item or authenticating communication).  Eclipse does not explain what separates these "solutions" from rudimentary computer tasks.  The claims of the '239 and '899 Patents are not eligible for patent protection because they amount to nothing more than the use of a conventional computer to apply an abstract idea.  *Alice*, 134 S. Ct. at 2359-60; *Intellectual Ventures*, 792 F.3d at 1366-71.

Eclipse's misunderstanding and misapplication of the Federal Circuit's analysis in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) further demonstrates how its '239 and '899 Patents lack an inventive concept and do not qualify for patent protection.  The patent at issue in *DDR Holdings* survived the *Alice* challenge because its claims provided an Internet-based solution to solve a problem unique to the Internet that "(1) did not foreclose other ways of solving the problem, and (2) recited a specific series of steps that resulted in a departure from the routine and conventional sequence of events after the click of a hyperlink advertisement." *Intellectual Ventures*, 792 F.3d at 1371; *see also DDR Holdings*, 773 F.3d at 1257-59.  Moreover, the Federal Circuit recently stated that the analysis of *DDR Holdings* has no

applicability to patents that do not address problems unique to the Internet. *Intellectual Ventures*, 792 F.3d at 1371 ("The patent claims here do not address problems unique to the Internet, so *DDR* has no applicability.").

Here, Eclipse's misapplication of *DDR Holdings* becomes strikingly clear when the claims of the '239 and '899 Patents are contrasted with the claims at issue in *DDR Holdings*. In *DDR Holdings*, the unique, Internet-based problem dealt with Internet-users visiting one web site who were interested in viewing products sold on another website, but the owners of the first web site did not want the visitors to be directed away from their web site to a different web site. *DDR Holdings*, 773 F.3d at 1257-58. The patent's "claimed solution used a series of steps that created a hybrid web page incorporating 'look and feel' elements from the host web site with commerce objects from the third-party web site" rather than attempting to "preempt every application of the idea of increasing sales by making two web pages look the same…." *Intellectual Ventures*, 792 F.3d at 1371; *DDR Holdings*, 773 F.3d at 1257-58. The claimed solution involved a series of steps that modified the conventional and routine sequence of events after a user clicks on a hyperlink. *DDR Holdings*, 773 F.3d at 1258-59.

By contrast, and as explained by Eclipse, the claims of the '239 and '899 Patents cover "methods for parties to discuss the status of a tracked item, including either authenticating the source of the communication ('239 Patent) or allowing a party to confer with another party regarding a tracked item ('899 Patent)." Eclipse's Br. in Opp., p. 13. Authenticated communication and item tracking are not problems uniquely rooted in the Internet, and even if they were, the Eclipse patent claims do not require anything more than the use of a conventional computer to perform a routine sequence of events. Dkt. 1-1, col. 94, ll. 3-18; Dkt. 1-1, col. 95, ll. 18-33; Dkt. 1-2, col. 92, ll. 1-13; Dkt. 1-2, col. 92, ll. 44-46. In its response, Eclipse did not even

attempt to explain how the claims of the '239 and '899 Patents do anything more than use a generic computer to perform a routine sequence of events. Eclipse's Br. in Opp., pp. 13-14. At best, Eclipse explained how the claims of the '239 and '899 Patents carry out a series of steps to yield a desired result, but such explanation is completely meaningless under the Supreme Court's and Federal Circuit's § 101 patent eligibility *Alice* analysis. Eclipse's Br. in Opp., pp. 13-14; *Alice*, 134 S. Ct. at 2359-60; *Intellectual Ventures*, 792 F.3d at 1366-71; *Ultramercial*, 772 F.3d at 716; *Bancorp*, 687 F.3d at 1277-79; *CyberSource*, 654 F.3d at 1375. And as explained in Marten's Opening Motion to Dismiss, the foregoing analysis applies to all claims of the '239 and '899 Patents in demonstrating that these claims are invalid because they are not eligible for patent protection under § 101 of the Patent Act. *See* Defendant Marten Transport Ltd.'s Motion to Dismiss Plaintiff's First-Amended Complaint, pp. 5-7, 15-20, 22-23 (hereinafter referred to as "Marten's Opening Br.").

## II. THE CLAIMS OF THE ECLIPSE PATENTS ARE DIRECTED TO ABSTRACT IDEAS.

The claims of the '239 and '899 Patents are directed to abstract ideas under the first step of the *Alice* analysis, and Eclipse fails to refute this conclusion. When determining whether a patent's claims are directed to abstract ideas, the court must look to the "concept embodied by the majority of the limitations." *Ultramercial,* 772 F.3d at 715. Moreover, as explained by the Federal Circuit in *Intellectual Ventures*, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures,* 792 F.3d at 1366.

The claims of the '239 and '899 Patents involve the types of basic human activity falling into the "abstract idea" category under the first step of *Alice*. *Intellectual Ventures*, 792 F.3d at 1367-69. When broken down into their conceptual elements – as detailed by Marten in its

opening brief – the claims of the '239 Patent describe the abstract idea of providing a user with authentication information, tracking the delivery or pickup of an item, and then notifying the user of the shipment's status using the authentication information. *See* Marten's Opening Br., pp. 11-15. Likewise, the claims of the '899 Patent recite the abstract idea of a means for two parties to communicate about the status of a shipment. *Id.* at 21. Eclipse notably does not dispute the accuracy of these claim summaries for the '239 and '899 Patents. Eclipse's Br. in Opp., pp. 11-12. Indeed, Eclipse's own summary of the '239 and '899 Patent claims, reproduced in the following sentence, is actually consistent with Marten's summaries and further demonstrates the abstract nature of the claims. Eclipse's Br. in Opp., p. 13. "[H]ere the elements of the '239 and '899 Patent claims transform the nature of the claims into a patent-eligible application of, for example, 'methods for parties to discuss the status of a tracked item, including either authenticating the source of the communication ('239 Patent) or allowing a party to confer with another party regarding a tracked item ('899 Patent).'" *Id.*

As part of its failed effort to save its fatally flawed patents, Eclipse disregards Supreme Court and Federal Circuit precedent and tries to substantially narrow application of the *Alice* test. Eclipse does so by mischaracterizing *Alice* and incorrectly asserting that "[t]he abstract idea exception is meant to preclude patentability *only* where a patent would 'pre-empt use of [an] approach in all fields, and would effectively grant a monopoly over an abstract idea.'" Eclipse's Br. in Opp., pp. 4, 12 (emphasis in original). While preemption can play a role in the *Alice* analysis, there is absolutely no requirement that a patent "pre-empt use of [an] approach in all fields" before the patent is ineligible for protection under 35 U.S.C. § 101. Both the Supreme Court and Federal Circuit have expressly stated that no such requirement exists. *Intellectual Ventures,* 792 F.3d at 1366 ("'[a]n abstract idea does not become nonabstract by limiting the

invention to a particular field of use or technological environment, such as the Internet.' *See Alice* 134 S. Ct. at 2358 (limiting an abstract idea to a particular technological environment, such as a computer, does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 593, 612, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) ('[L]imiting an abstract idea to one field of use . . . d[oes] not make the concept patentable.')").

The claims of both the '239 and '899 Patents are directed to abstract ideas, and, as explained in Section I above, these patent claims do not contain any inventive concepts that would confer patent eligibility. The claims of the '239 and '899 Patents accordingly are invalid because they do not recite subject matter eligible for patent protection under 35 U.S.C. § 101 and the Supreme Court's analysis set forth in *Alice*.

### III. THE COURT DOES NOT NEED TO WAIT FOR CLAIM CONSTRUCTION IN ORDER TO DETERMINE THAT THE PATENTS ARE INVALID UNDER SECTION 101 AND *ALICE*.

Judicial economy dictates that there is no need to wait for claim construction in this case as Eclipse suggests. Many courts, including this Court, have made § 101 determinations prior to claim construction and explained why early § 101 determinations are necessary. *See* Marten's Opening Br., pp. 8-9. Specifically, an early § 101 determination can conserve scarce judicial resources, provide a "bulwark against vexatious infringement suits," and protect the public by "clearing the patent thicket." *Ultramercial,* 772 F.3d at 718-19 (Mayer, J. concurrence). Early resolution here will serve all of these purposes and save both the Court and parties from wasting further resources in connection with the strikingly invalid '239 and '899 Patents. Further, the Federal Rules of Civil Procedure are to be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The U.S. District Court for the Central District of California has already invalidated the parent patent to the '239 and '899 Patents, and this Court should now do the same with the '239 and '899 Patents. *See*

*Eclipse IP LLC v. McKinley Equip. Corp.*, No. SAVC 14-154-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014).

As but one example, the Court does not need to waste further time and resources on this case because it is clear from Eclipse's Proposed Claim Construction filed in another co-pending case before this Court that Eclipse views the claims of the '239 Patent and the '899 Patent very broadly and in a manner that would not change any of the invalidity conclusions here. *See* The Parties' Proposed Construction, *Eclipse IP, LLC v. GameStop Corp.*, Case No. 2:13-cv-00067-JRG-RSP (E.D. Tex. Jan. 9, 2014), Dkt. 70-1. Moreover, while Eclipse tries to criticize Marten for asserting that "'authentication information' should be construed broadly," in its opening infringement contentions, Eclipse actually applies this term in a broad manner, stating that examples of the claimed "authentication information" include "shipping information, billing information, customer reference information, and/or contact information." Declaration of Elijah B. Van Camp, Ex. A, p. 2.

Waiting for claim construction would change nothing and only delay the inevitable. While Marten reserves the right to disagree with Eclipse's Proposed Claim Constructions filed in the *GameStop* case, those Proposed Claim Constructions demonstrate that Eclipse is asserting the '239 and '899 Patents in a manner highlighting the abstract nature of the claims and how the claims are untethered from any inventive concept under *Alice*. There is no need to wait for claim construction here because Eclipse views its patents so broadly that they will undoubtedly be invalid under *Alice* after claim construction. Deciding this issue now will save the parties and the Court valuable time and resources.

**IV.    MARTEN MET ITS BURDEN.**

Marten met its burden to show by clear and convincing evidence that the Patents at issue are invalid under *Alice* and 35 U.S.C. § 101. Rather than directly disputing Marten's

straightforward analysis anchored in Supreme Court and Federal Circuit precedent, it appears that Eclipse believes its strongest position is to retreat and hide behind the clear and convincing evidentiary burden of proof. Despite Eclipse's multiple burden of proof protestations, Marten's arguments and supporting evidence are in harmony with Federal Circuit precedent repeatedly holding similar patents invalid under *Alice*. *See* Marten's Opening Br., pp. 11-20.

## CONCLUSION

As such, Marten respectfully asks the court to dismiss Eclipse's First-Amended Complaint with prejudice.

Dated this 27th day of August, 2015.

        Respectfully Submitted,

        **DEWITT ROSS & STEVENS S.C.**

        By: /s/ Harry E. Van Camp
            Harry E. Van Camp (*admitted pro hac vice*)
            Elijah B. Van Camp (*admitted pro hac vice*)
            Two East Mifflin Street, Suite 600
            Madison, WI  53703-2865
            608-255-8891
            hvc@dewittross.com
            evc@dewittross.com

            Joseph T. Miotke (*admitted pro hac vice*)
            DeWitt Ross & Stevens S.C.
            13935 Bishop's Drive, Ste. 300
            Brookfield, WI  53005-6605
            262-754-2840
            jtm@dewittross.com

            Amanda A. Abraham (TX Bar No. 24055077)
            **THE ROTH LAW FIRM, P.C.**
            115 N. Wellington, Suite 200
            Marshall, Texas 75670
            903-935-1665
            aa@rothfirm.com

        **ATTORNEYS FOR DEFENDANT, MARTEN TRANSPORT, LTD.**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 27th day of August, 2015.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

                                                  /s/ Harry E. Van Camp
                                                  Harry E. Van Camp